UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTONIO CABRERA,                        )
                Plaintiff,              )
                                        )
                                        )
        v.                              )        Civil No. 3:21-cv-30018-KAR
                                        )
                                        )
KILOLO KIJAKAZI,                        )
Acting Commissioner of the Social       )
Security Administration,[1]             )
                Defendant.              )
                                        )

MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S
MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER
(Dkt Nos. 16 and 18)

ROBERTSON, U.S.M.J.

I.   **Introduction and Procedural History**

    Antonio Cabrera ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) seeking review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for Social Security Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI").  Plaintiff applied for DIB and SSI on

November 28, 2016, alleging an August 15, 2016, onset of disability due to diabetes and

neuropathy (A.R. 402-417, 453).[2]  His application was denied initially (A.R. 251-57) and on

---

[1] On July 9, 2021, Kilolo Kijakazi was appointed as Acting Commissioner of the Social Security Administration by President Joseph R. Biden.  Under Federal Rule of Civil Procedure 25(d), she is automatically substituted as the defendant in this case.

[2] A transcript of the Social Security Administration Official Record ("A.R.") has been filed with the court under seal (Dkt. No. 10).  Citations to the A.R. page numbers are those assigned by the agency and appear on the lower right-hand corner of each page.

reconsideration (A.R. 263-65).  He requested a hearing before an Administrative Law Judge ("ALJ"), and one was held on June 26, 2018 (A.R. 152-180).  On September 28, 2018, the ALJ issued an unfavorable decision (A.R. 223-246).  Plaintiff sought review by the Appeals Council (A.R. 317-323), which vacated the Commissioner's decision and remanded the case back to the ALJ for further proceedings (A.R. 247-250).  The Appeals Council directed the ALJ to obtain additional evidence regarding Plaintiff's hand impairment, give further consideration to Plaintiff's maximum residual functional capacity, and obtain supplemental evidence from a vocational expert (A.R. 249).  After a rehearing on January 17, 2020, the ALJ again found that Plaintiff was not disabled and denied Plaintiff's DIB and SSI claims in a decision dated March 31, 2020 (A.R. 41-66, 126-151).  Once again, Plaintiff sought review by the Appeals Council (A.R. 24-28), which this time around denied review (A.R. 5-11).  Thus, the ALJ's decision became the final decision of the Commissioner, and this suit followed.

Plaintiff appeals from the ALJ's decision on the ground that the ALJ erred by not assessing further manipulative limitations to Plaintiff's residual functional capacity despite finding that bilateral carpal tunnel syndrome was a severe impairment.  Pending before this court is Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) and Defendant's motion for an order affirming the decision of the Commissioner (Dkt. No. 18).  The parties have consented to this court's jurisdiction (Dkt. No. 15).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons stated below, the court denies Plaintiff's motion and allows the Commissioner's motion.

II.     **Legal Standards**

A.   Standard for Entitlement to DIB and SSI

In order to qualify for DIB and SSI, a claimant must demonstrate that he is disabled

within the meaning of the Social Security Act.[3]  A claimant is disabled for purposes of DIB and

SSI if he is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An "individual shall be determined to be under a

disability only if his physical or mental impairment or impairments are of such severity that he is

not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national

economy, regardless of whether such work exists in the immediate area in which he lives, or

whether a specific job vacancy exists for him, or whether he would be hired if he applied for

work."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner evaluates a claimant's

impairment under a five-step sequential evaluation process set forth in the regulations

promulgated by the Social Security Administration.  *See* 20 C.F.R. § 404.1520(a)(4)(i-v).[4]  The

hearing officer must determine:  (1) whether the claimant is engaged in substantial gainful

activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment

meets or equals a listed impairment contained in Appendix 1 to the regulations; (4) whether the

---

[3] There is no challenge to Plaintiff's insured status for purposes of entitlement to DIB, *see* 42 U.S.C. § 423(a)(1)(A), or to his financial need for purposes of entitlement to SSI, *see* 42 U.S.C. § 1381a.
[4] The administrative regulations applicable to Title II DIB are found in 20 C.F.R. Part 404, while the regulations applicable to Title XVI SSI are found in 20 C.F.R. Part 416.  Because Title II and Title XVI regulations do not differ substantively, the court refers only to the Title II regulations in this Memorandum and Order.

impairment prevents the claimant from performing previous relevant work; and (5) whether the impairment prevents the claimant from doing any work considering the claimant's age, education, and work experience. *See id; see also Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982) (describing the five-step process). If the hearing officer determines at any step of the evaluation that the claimant is or is not disabled, the analysis does not continue to the next step. 20 C.F.R. § 404.1520(a)(4).

Before proceeding to steps four and five, the Commissioner must make an assessment of the claimant's residual functional capacity ("RFC"), which the Commissioner uses at step four to determine whether the claimant can do past relevant work and at step five to determine if the claimant can adjust to other work. *See id.*

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.

Social Security Ruling 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

The claimant has the burden of proof through step four of the analysis, including the burden to demonstrate RFC. *Flaherty v. Astrue*, Civil Action No. 11-11156-TSH, 2013 WL 4784419, at *8-9 (D. Mass. Sept. 5, 2013) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). At step five, the Commissioner has the burden of showing the existence of jobs in the national economy that the claimant can perform notwithstanding his or her restrictions and limitations. *Goodermote*, 690 F.2d at 7.

B. Standard of Review

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner, with or without remanding for rehearing. *See* 42 U.S.C. § 405(g).

4

Judicial review "is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).  The court reviews questions of law *de novo*, but "the ALJ's findings shall be conclusive if they are supported by substantial evidence, and must be upheld 'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion,' even if the record could also justify a different conclusion." *Applebee v. Berryhill*, 744 F. App'x 6, 6 (1st Cir. 2018) (mem.) (quoting *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981) (citations omitted)).  "Substantial-evidence review is more deferential than it might sound to the lay ear:  though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (quoting *Bath Iron Works Corp. v. U.S. Dep't of Labor*, 336 F.3d 51, 56 (1st Cir. 2003)).  In applying the substantial evidence standard, the court must be mindful that it is the province of the ALJ, and not the courts, to determine issues of credibility, resolve conflicts in the evidence, and draw conclusions from such evidence.  *See Applebee,* 744 F. App'x. at 6.  That said, the ALJ may not ignore evidence, misapply the law, or judge matters entrusted to experts.  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

### III.   Relevant Facts

#### A.  Plaintiff's Background

Plaintiff was forty-eight years old on the date of the re-hearing before the ALJ (A.R. 57). He has a high school education (A.R. 147).  He has worked as an electroplater, bus driver, and equipment cleaner (A.R. 147).

B.  <u>Medical Records Relative to Plaintiff's Claim</u>[5]

On December 8, 2017, Plaintiff met with Kyle W. Bruce, DPM, of Riverbend Medical Group for a diabetic foot checkup (A.R. 745-748).  Plaintiff reported that he experienced "occasional zinger type pain and pins and needles constant feeling in toes and fingers" (A.R. 745).  Following examination, Dr. Bruce's impression was Type 2 diabetes mellitus with diabetic neuropathy (A.R. 747).

Plaintiff returned to Riverbend Medical Group on May 8, 2018, at which time he was seen by Jason Luszcz, PA-C (A.R. 733-38).  Plaintiff's primary complaint was of knee pain, but he also reported noticing a small subcutaneous cyst-like formation on the palm of his left hand (A.R. 733).  Mr. Luszcz suspected the nodule was a tenodaceous cyst and provided a referral to a hand surgeon as Plaintiff reported it had been growing in size and was causing discomfort (A.R. 737).

On June 14, 2018, Plaintiff was seen by Demetrios Sotiropoulos, PA-C, at the Orthopedic Care Center, for his left-hand mass (A.R. 764-765).  According to Plaintiff, the growth was causing him pain that he rated a seven on a ten-point scale, although he described the pain as intermittent in nature (A.R. 764).  He further stated that he had been experiencing tingling to all his fingers for the past few days and that the tingling was intensifying (A.R. 764).  Upon examination, the mass was tender to palpation and Plaintiff reported tingling to all his fingers and thumb upon palpation (A.R. 765).  He exhibited a positive Phalen's sign and negative Tinel's sign at the wrists (A.R. 765).  Plaintiff was able to make a fist with his left hand (A.R. 765).  Following examination and x-rays, Mr. Sotiropoulos's impression was that the mass was

---

[5] Plaintiff challenges only the ALJ's evaluation of his alleged hand impairment.  Therefore, only his treatment that is relevant to his alleged hand impairment is summarized here.

benign and likely a ganglion cyst and that the tingling sensation Plaintiff was describing was

likely related to diabetic neuropathy (A.R. 765).  Mr. Sotiropoulos advised Plaintiff that he could

follow up with Catherine Spath, M.D., if he wished to have the cyst aspirated (A.R. 765).

Cabrera met with Dr. Spath on July 17, 2018 (A.R. 781-82).  Plaintiff reported that the

mass on his left palm appeared to be getting bigger and that he had a long-time history of

tingling in all his fingers (A.R. 781).  He also reported numbness that would wake him at night

and difficulty making a full fist (A.R. 781).  Upon examination, Dr. Spath indicated that the mass

appeared to be a fibroma and that it was a bit tender and very superficial (A.R. 781).  Plaintiff

exhibited altered sensation and some numbness and tingling on the very tips of his fingers, which

was made worse by tapping at the wrist crease and with the Phalen's test (A.R. 781).  Plaintiff

was able to flex and extend his wrists and elbows without difficulty (A.R. 781).  Dr. Spath

indicated that she was going to refer Plaintiff for nerve testing "to get a sense of the severity of

the neuropathy relative to the carpal tunnel" and advised leaving the mass alone until they had

more information on the neuropathy (A.R. 781).  She also determined to send Plaintiff to

occupational therapy to get his hands moving better because, while he could move them, he

could not make a tight fist (A.R.781).

On July 17, 2018, Plaintiff was seen at the Weldon Center for Rehabilitation at Mercy

Medical Center for an occupational therapy evaluation by Sharon Maynard OTR (A.R. 775-78).

Plaintiff reported pain and weakness with all grip and pinch tasks (A.R. 775).  According to

Plaintiff, his hand pain was an eight on a ten-point scale (A.R. 775).  Plaintiff stated that the pain

was aggravated by lifting, reaching, sleeping, gripping, and pinching, and that the pain woke him

often (A.R. 776).  Activities that Plaintiff reported being unable to do included opening a tight or

new jar, doing heavy household chores, carrying a bag or briefcase, washing his back, and using

a knife to cut food (A.R. 767).  Ms. Maynard examined Plaintiff and assessed him with bilateral

carpal tunnel syndrome with impaired activities of daily living, decreased range of motion,

decreased coordination, and decreased strength (A.R. 776-77).  Plaintiff was fitted with bilateral

soft neoprene splints for sleeping to decrease overstretching and allow neural healing to occur

(A.R. 777).  Ms. Maynard recommended occupational therapy one to two times per week for

four to six weeks to reduce pain and functional limitations (A.R. 778).  Plaintiff's therapy was

discontinued, however, as he was not showing up for appointments (A.R. 816).

Plaintiff followed up with Dr. Spath regarding his bilateral hand pain and numbness on

October 16, 2018 (A.R. 814).  Plaintiff described a lot of burning and tingling in both hands

(A.R. 814-15).  Dr. Spath noted that Plaintiff had a carpal tunnel injection on the left side, but

that he reported "it did not really make much of a dent" (A.R. 814).  Nerve conduction studies

did not reveal any measurable focal compression of the median nerve (A.R. 814).  Upon physical

examination, Plaintiff did not make a full fist because he complained of it hurting too much

(A.R. 814).  He reported numbness to all the fingertips to light touch and to the back of the hands

(A.R. 814).  Plaintiff had a positive Tinel at both hands and positive Durkan compression tests

(A.R. 814).  Dr. Spath indicated that she was "a little puzzled" by Plaintiff's presentation

because his symptoms seemed quite severe to be diabetic neuropathy, but he had not really

responded to treatments thus far (A.R. 814).  Dr. Spath administered a cortisone shot on the right

side and recommended that he follow-up with his primary care provider to consider a neurology

evaluation (A.R. 814).

On December 11, 2018, Plaintiff returned to Orthopedic Care Center where he was once

again seen by Mr. Sotiropolous (A.R. 816-17).  Mr. Sotiropolous noted that Plaintiff did not

respond to cortisone injections to either the right or left carpal tunnel and bracing at night was

not providing any relief (A.R. 816-17).  Mr. Sotiropolous was unable to test carpal signs

effectively as Plaintiff was having a lot of sensitivity around his volar wrist, saying it was painful

there but denying any numbness or tingling when Mr. Sotiropolous attempted Tinel's and

Phalen's (A.R. 816).  Plaintiff was able to make a fist with both hands and extend his fingers

(A.R. 816).  Mr. Sotiropolous planned to conduct an MRI without contrast of Plaintiff's cervical

spine to determine if Plaintiff's symptoms were due to a neck impairment (A.R. 817).

Plaintiff returned to Dr. Spath on July 15, 2019, for "unremitting bilateral hand pain of

uncertain etiology" (A.R. 903-04).  Plaintiff "complained bitterly of sensory abnormalities along

both the palmar and dorsal surfaces of both hands" and exhibited tenderness at the site of the

mass on his left palm (A.R. 903).  Dr. Spath noted that Plaintiff had undergone an MRI, but it

showed only a very small C4-C5 herniation (A.R. 903).  Dr. Spath had difficulty examining

Plaintiff because "he would withdraw and not participate" in the examination (A.R. 904).  Her

examination did not yield any diagnoses, and she did not have any surgical treatments that would

help him (A.R. 904).  She suggested that he follow up with his primary care physician (A.R.

904).

On July 25, 2019, Plaintiff met with Stephanie Lepage, PA-C, at New England

Neurosurgical Associates (A.R. 941-42).  Physical examination revealed poor hand grip and

hand intrinsics and touching his hands was very painful for him (A.R. 942).  Ms. Lepage noted

that there did not appear to be anything on Plaintiff's spinal MRI that would explain his

symptoms, and she gave him a prescription to check for Lyme disease (A.R. 942).  She indicated

she would review Plaintiff's case with Kamal K. Kalia, M.D., F.A.A.N.S., to see if he would

want a brain MRI or other testing (A.R. 942).

Plaintiff underwent a brain MRI on September 12, 2019, which showed mild paranasal sinus disease and was otherwise normal (A.R. 943).  Ms. Lepage referred Plaintiff to an evaluation with a neurologist (A.R. 943).

Plaintiff saw John O'Connell, M.D., of Northampton Neurology on November 18, 2019 (A.R. 907-909).  At the time, Plaintiff described pain that felt like electricity going down his neck and arms and what felt like stabbing in his feet and hands (A.R. 907).  Dr. O'Connell noted that physical examination was difficult due to diffuse pain, but Plaintiff exhibited tenderness to palpation of the hand (A.R. 908).  Dr. O'Connell's impression was of diffuse pain throughout, possibly fibromyalgia, diabetic neuropathy with no clear neuropathic pattern, and possible MS (A.R. 908).

C.  Hearing Testimony Relative to Plaintiff's Claim

Plaintiff testified at the rehearing that he has pain in both hands, with the left being worse than the right because "of the ball" on it (A.R. 140).  According to Plaintiff, the pain is constant and likened it to the sensation of getting hit in the elbow (A.R 140).  Plaintiff indicated that he had undergone physical therapy and injections to his hands but that neither relieved the pain (A.R. 140).  Plaintiff described having difficulty picking up and holding onto objects and opening jars (A.R. 140-41).

D.  The ALJ's Decision

To determine whether Plaintiff was disabled, the ALJ conducted the five-part analysis required by the regulations.  At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date (A.R. 46).  At the second step, the ALJ found that Plaintiff had a combination of severe impairments consisting of "insulin dependent diabetes mellitus (diagnosed 2016), diabetic neuropathy (diagnosed based on symptoms of lower

extremity pain), bilateral carpal tunnel syndrome (by clinical findings; normal EMG studies),

mild osteoarthritis bilateral knees (minor spurring only May 2018), overweight to obese weight

(BMI 30-32), adjustment disorder with depressed mood (diagnosis and treatment began

November 2017), and 'very small' cervical disc bulge (C4-C5 with no nerve root involvement)"

(A.R. 46-47).  At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the impairments

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (A.R. 48).  Before proceeding to steps four

and five, the ALJ found that Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)
> except the claimant can perform occasional operation of foot
> controls/push/pull with the bilateral lower extremities.  The claimant can
> perform occasional balancing and climbing of ramps and stairs.  He cannot
> crouch, crawl, kneel, or climb ladders, ropes, or scaffolds with any measurable
> regularity.  The claimant has no limitations in stooping (bending at the waist).
> The claimant can understand, remember, and carry out simple instructions
> throughout an ordinary workday and workweek with normal breaks on as
> sustained basis, without strict rate, pace or production requirements.  The
> claimant can adapt to simple and occasional change in the routine work
> setting.

(A.R. 49).  At step four, the ALJ determined that Plaintiff was unable to perform past relevant

work (A.R. 57).  At step five, relying on the testimony of a vocational expert, the ALJ

determined that Plaintiff could perform jobs found in significant numbers in the national

economy taking into account Plaintiff's age, education, work experience, and RFC, and,

therefore, Plaintiff was not disabled (*id*. at 58-59).

### IV.  Analysis

Plaintiff single argument on appeal is that the ALJ erred in her RFC assessment by failing

to account for Plaintiff's bilateral carpal tunnel with manipulative limitations in addition to

limiting Plaintiff to sedentary work after having determined at step two of the five-step process

that Plaintiff's bilateral carpal tunnel syndrome was "severe."  Plaintiff does not make any developed argument in his brief, but what he seems to be claiming is that a finding of a severe impairment at step two requires RFC limitations linked to that impairment.  The court rejects this argument.

"[C]ourts treat it as well settled that 'the mere fact that an impairment may be "severe" for purposes of Step 2 does not require a finding that the impairment significantly restricts [the plaintiff's] ability to perform work, i.e., his RFC.'"  *John S. v. Berryhill*, C.A. No. 18-55JJM, 2018 WL 4521943, at *5 (D.R.I. Sept. 21, 2018) (second alteration in original) (quoting *Joseph N. v. Berryhill*, C.A. No. 17-375 WES, 2018 WL 2722461, at *7 (D.R.I. June 6, 2018)).  "'The determination at step two as to whether an impairment is severe is a de minimis test, designed to "screen out groundless claims."'"  *Benelli v. Comm'r of Soc. Sec.*, Civil Action No. 14-10785-MBB, 2015 WL 3441992, at *27 (D. Mass. May 28, 2015) (quoting *Hines v. Astrue*, No. 11-cv-262-PB, 2012 WL 2752192, at *9 (D.N.H. July 9, 2012)).  "Consequently, '[a]n ALJ's finding that an impairment is severe does not necessarily translate into functional restrictions in the RFC.'"  *Id.* (quoting *Hines*, 2012 WL 2752192, at *9); *accord Davis-Grimplen v. Comm'r. Soc. Sec. Admin.*, 556 F. App'x 858, 863 (11th Cir. 2014) ("The ALJ had ample evidence on which to concluded that [the plaintiff] did not have functional limitations of her hands notwithstanding that her bilateral carpal tunnel syndrome is a severe impairment."); *Griffeth v. Comm'r of Soc. Sec.*, No. 06-1236, 2007 WL 444808, at *3 (6th Cir. Feb. 9, 2007) (holding that the ALJ's finding at step two that the plaintiff's limitation was more than minimal "was not inherently inconsistent with his finding that the limitation has 'little effect' on the claimant's ability to perform basic work related activities"); *Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006) (rejecting the plaintiff's argument that the ALJ's opinion was "internally inconsistent"

because he found certain impairments "severe" at step two, while the limitations were not

included in the ALJ's RFC analysis at step four); *Sykes v. Apfel*, 228 F.3d 259, 268 n.12 (3d Cir.

2000) (" A finding under step two of the regulations that a claimant has a 'severe' nonexertional

limitation is not the same as a finding that the nonexertional limitation affects residual functional

capacity").  "If no specific functional limitations from a severe impairment exist, the ALJ need

not include a corresponding limitation for that impairment in the RFC."  *Owens v. Colvin*, Case

No. 3:15-cv-409-J-JBT, 2015 WL 12856780, at * 2 (M.D. Fla. Oct. 15, 2015) (citing *Castel v.*

*Comm'r of Soc. Sec.*, 355 Fed. Appx. 260, 264 (11th Cir. 2009)).  Thus, Plaintiff's argument is

simply incorrect.

The court further determines that the ALJ's decision not to include any specific

manipulative limitations in the RFC assessment arising from Plaintiff's bilateral carpal tunnel

syndrome is supported by substantial evidence.  Although Plaintiff complained of hand pain and

numbness and sought treatment for it, the ALJ could reasonably view the evidence as not

requiring any functional limitation in excess of the limitation to sedentary work.  Substantial

evidence in the form of the lack of objective evidence and Plaintiff's lack of credibility (which

the ALJ discounted, and which determination is not challenged on appeal), supports the ALJ's

determination.  On December 11, 2018, Mr. Sotiropoulos's examination of Plaintiff revealed

intact sensation and distal circulation to the upper extremities, and Plaintiff was able to make a

fist with both hands and extend his fingers (A.R. 816).  Nerve conduction studies did not reveal

any measurable focal compression of the median nerve leading Dr. Spath to conclude that

surgical decompression would not improve Plaintiff's presentation and leaving her "puzzled" by

his alleged symptoms (A.R. 814, 817).  A cervical MRI showed only a very small C4-C5

herniation that did not explain Plaintiff's alleged symptoms (A.R. 903).  In addition, no

physician offered an opinion restricting Plaintiff's manipulative abilities. Thus, the ALJ's RFC determination is supported by substantial evidence, and the decision of the Commissioner should be affirmed.

**V.      Conclusion**

For the reasons stated above, Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is DENIED and Defendant's motion for order affirming the decision of the Commissioner (Dkt. No. 18) is ALLOWED. The Clerk's Office is directed to close the case on this court's docket.

It is so ordered.

Dated: November 3, 2021                           /s/ Katherine A. Robertson
                                                                  KATHERINE A. ROBERTSON
                                                                  United States Magistrate Judge